The opinion of the court was delivered by
DeBlanc, J.
Arthur Boitreaux was indicted, in the parish of Iberville, for the murder of one Alfred Reneaud. He obtained a change of venue, was tried in the parish of East Baton Rouge, and — there—the' jury returned against him a verdict of “ guilty, with put capital punishment.” He was, accordingly, sentenced to hard labor in the State Penitentiary, for the term of his life, and — from said verdict and sentence— has appealed to this court.
It appears, by defendant’s bill of exceptions that, on the 12th of March, his trial was fixed for the 22d day of that month, and that, on the 12th his counsel ordered subpoenas to be issued for two of his witnesses, JDuplessis Bergeron and Yirginia Boitreaux, who reside — the' first in the parish of Iberville, the other in the parish of Pointe Coupee. *189 His counsel’s instructions were not complied with, and the subpcenas ordered not issued. This grave neglect is not accounted for.
Though, in this respect, the prisoner’s instructions had been entirely-disregarded, the court, on the 22d of March, granted writs of attachment against said witnesses and postponed the trial to the 28th of said month. Those writs, directed to the sheriff of East Baton Rouge, were —by him — placed in the hands of a constable of the parish of Iberville, specially authorized, by him to execute the same, one in and the other out of the parish of the constable’s residence.
This was, partly at least, irregular. The sheriff could not, legally, have authorized a constable elected in and for the parish of Iberville, to execute an attachment in the parish of Pointe Coupée. The officer thus deputed could, under the law, have acted, either in his official capacity, or with the sheriff’s delegated authority, but within the limits of the parish in and for which he was elected and commissioned as constable.
C. P. 765 — Rev. St. sect. 638, 641.
He was, however, deputed to execute the important mandates of the court, and his returns thereon were — on that under which he was to attach Bergeron, “ could not find such a man,” and on the other, that under which he was to attach Virginia Boitreaux, “ could not be found.” This was not sufficient.
It is urged, in behalf of the State, that no description of the person or places of residence of said witnesses was given, except that they lived on False River. The answer to this argument is that, when the life and liberty of a prisoner are at stake, and that prisoner chained within the walls of a dungeon, it is the duty of the sheriff or of his deputies, in charge of subpcenas or attachments for his witnesses, to go to his dungeon, and obtain from him any information which may enable them to execute the process of the court; nor is this all: their return must show what steps they have taken, what inquiries they have made, from whom and where those inquiries were made, to find the prisoner’s witnesses. It is not for them to pronounce that the witnesses cannot be found, they must state every fact which, in their opinion, justifies their belief. This done, and the return presented, the judge then decides whether there has been, on the part of that officer, that diligent search without which the prisoner might be deprived of a constitutional privilege, and his life and liberty arbitrarily imperiled.
Constitution of 1868, art. —, Voorhies, Rev. St. sect. 992.
From merely the naked return “ could not be found,” written at the foot of the writ by one who had no authority to execute it, we cannot— in a cause of this magnitude, even presume that the constable has repaired to any section of the locality which — it is contended — was too vaguely designated; much less can we presume that the witnesses he *190 was ordered to attach do not exist, or — if existing — do not reside in the designated section.
When — to procure the attendance of his witnesses — the prisoner has; in proper time, ordered subpoenas to issue, he cannot be compelled to apply for attachments, swear to the facts which he intends to prove by them, or go to trial in their absence, until an earnest and fruitless attempt has been made to bring them in court.
On the 28th of March, one of the prisoner’s counsel moved for a continuance of his client’s case, and based his motion on an affidavit prepared and sworn to by himself, in which he averred that, as the witnesses of the defence had not been subpcened, no search could have been made for them, and that, to the best of his belief, the accused could prove by them, and particularly by Virginia Boitreaux, that — prior to the homicide — the deceased had been in constant carnal communication with his — the prisoner’s — wife, and the prisoner notified of that fact.
Was the alleged adulterer killed in the bed, while leaving the bed, or trying to escape from the chamber of the accused ? Was he killed while the act of adultery was progressing, or immediately after the criminal intercourse, with or without deliberation? The circumstances under which the homicide was committed are not disclosed in the affidavit, and — in this respect — it is insufficient: but though unintentionally — as we have every reason to believe — the prisoner has — to a certain extent— been denied the process guaranteed to him by the constitution and the laws of the State for obtaining witnesses in his favor.
Const, of 1868, art. 6; Rev. St. sect.
“ It would appear — as said by Mr. Waterman, in his notes to Archibold’s Criminal Practice and Pleadings — that the moral sentiment of the civilized world justifies the homicide of a wanton destroyer of female chastity and domestic happiness.” In such a case, as the fact to be ascertained is whether the infliction of the indignity was the real, the immediate, the exclusive cause of the homicide, those who resent and avenge that indignity, should be vigilantly assisted in every sincere and reasonable effort to procure the attendance of the witnesses by whom the infliction may be established. Here, there is at least a rational doubt that the assistance extended to the prisoner was as complete as it should ever be, and he is entitled to the benefit of that doubt.
It is, therefore, ordered, adjudged and decreed that the verdict returned and recorded against defendant is annulled and set aside, the judgment appealed from avoided and reversed, and this case remanded to the lower court, to be there proceeded with according to the views herein expressed and according to law.